THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN R. LOFTUS *et al.*, Defendants-Appellees.

Third District Nos. 3—86—0256, 3—86—0257 cons.

Opinion filed July 20, 1987.

Raymond Kimbell II, State's Attorney, of Galesburg (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellees.

JUSTICE BARRY delivered the opinion of the court:

The State appeals from orders suppressing all evidence and statements and quashing the arrests of Steven R. Loftus and Randall K. Wagner in an attempted burglary prosecution.

At the hearing on the motions to suppress, testimony was presented which indicated that on December 17, 1985, Joseph Gorse, an assistant professor of chemistry at Knox College in Galesburg, Illinois, heard someone enter the science building and walk down the hall. Since school was not in session, he went to investigate. He saw some debris in the hall in front of the door of Prof. Neumiller's office and saw someone's head look around a corner. He next saw two young men running down the hall and out the door. Gorse followed them, and as they ran across the street and started through the yard between an apartment building and a convenience store, Gorse spotted a police car coming along the street. He signalled to the officer by pointing to the two men.

Officer Robert Dennis testified that he first saw the two men running and then saw Gorse in the doorway of the science building pointing at them. Officer Dennis radioed this information over the police radio as he proceeded around the block. He stated that there were six inches of new snow on the ground at this time. He saw the same two men coming through a yard between two houses in the middle of a block and saw that they had gone over a fence. They were walking until they saw the officer; then they both began to run. One man (Wagner) ran through several front yards and then turned between two apartment buildings. Officer Dennis radioed this information to another officer who was approaching the vicinity. The other man (Loftus) came toward Officer Dennis, stopped near the police car, and threw his hands into the air. Dennis asked him why he was running, and he answered that they were just out running around. Loftus said that they had been in the hallway of the science building, that they "got scared" and started running, and that he was not a Knox College student. When asked for identification, Loftus produced a Missouri driver's license. He said he did not know the name of the man who had been with him. Dennis received a radio call that the other man had been apprehended, and he told Loftus that he would have to go back to the science building. Loftus got into the police car and was returned to the science building. On cross-examination, Officer Dennis stated that, if Loftus had said he was unwilling to go, Officer Dennis would not have released him.

Officer Edward Herrin saw Wagner as he walked along a sidewalk a block or two from where Officer Dennis had stopped Loftus. Officer Herrin recognized Wagner by his clothing and backpack, which matched the description broadcast over the radio. Officer Herrin called Wagner over to the car and asked him to get in the front seat. The officer told Wagner he wanted him to go to the science building with

him to see what the problem was, and they proceeded to that location, where they met Officer Dennis, Loftus and Joseph Gorse. After Gorse identified the two men as the ones he had seen running from the building and after the officers had inspected the damage done to Prof. Neumiller's office door, obviously the result of an attempted break-in, Loftus and Wagner were taken to the police station, were given their *Miranda* warnings, and interrogated. Both men gave the police written statements admitting the attempt to break into the office in the science building.

At the conclusion of the suppression hearing, the trial court ruled that the police made a valid stop of the defendants under the guidelines of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, but that the officers lacked probable cause to detain the suspects and transport them back to the scene of the crime.

On appeal, defendants do not dispute that a valid *Terry* stop occurred here, and the State does not dispute that the police lacked probable cause to arrest the defendants when they were stopped. The only issue here is whether the police were justified in an investigatory detention and transportation of defendants two or three blocks back to the science building for identification.

The standard enunciated in *Terry v. Ohio* requires that an investigatory stop be justified with specific facts which, taken together with reasonable inferences from those facts, warrant the intrusion. Here the police officers were clearly justified in making an investigatory stop after seeing defendants run through snow-covered yards and after seeing Gorse gesturing toward them from the doorway of a college building on a day when college was not in session.

Defendants argue that the police were not justified in transporting them back to the science building because the officers did not even know whether or not a crime had been committed. Defendants rely upon *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, where a defendant was picked up and taken to a police station for interrogation on less than probable cause for an arrest. The U.S. Supreme Court held that detention for custodial interrogation intrudes so severely on interests protected by the fourth amendment guarantees against illegal searches and seizures as to trigger the traditional safeguards against illegal arrest. In *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766, the Illinois Supreme Court also ruled illegal the detention and transportation of the defendants to the police station for questioning without knowledge that a crime had been committed. In *People v. Reynolds* the police had stopped a station wagon pulling a trailer without taillights. The police saw several boxes la-

belled "Magnavox" in the trailer. Radio inquiry revealed no knowledge of any theft or other crime at the T.V. store whose address was on the boxes. Nevertheless, defendants were taken to the police station for further investigation, and shortly thereafter the owner of the T.V. store arrived to identify the trailer and its contents as stolen from him.

In the case at bar, defendants were not detained and transported to the police station for custodial interrogation as in *Dunaway v. New York* and *People v. Reynolds*. Here defendants were stopped upon an articulable suspicion that they had committed or were about to commit a crime. They were fleeing from the police through yards deep in new snow, and upon initial questioning, admitted having been in a college building though they were not college students and though the college was not in session. They were detained until the witness who was at the building could be consulted to provide positive identification and additional information.

In *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, when defendants were stopped on a country road, the police saw that the occupants of the car roughly matched the description of the men who had committed a robbery at a restaurant about 30 minutes earlier, and the suspects were taken to the restaurant where they were identified by several victims of the robbery. The Illinois Supreme Court held that the transportation of the defendants a short distance for purposes of a showup was a legitimate investigatory procedure even though the police had no cause to arrest them at that point. There it was more reasonable to transport the suspects to the scene of the crime for identification than it was to detain them on a country road until the witnesses could be transported to the location of the suspects. The fact that the police knew a crime had been committed in *People v. Lippert* is not sufficient to distinguish it from the instant case.

A case factually similar to the one at bar is *People v. Vena* (1984), 122 Ill. App. 3d 154, 460 N.E.2d 886, where police received two reports that three suspicious men had been seen walking through some backyards during a blizzard in an area where several burglaries had recently occurred. A police officer followed the footprints through the snow until he saw the suspects. They ran from him until he told them to "freeze." The officer searched the men and took them to the police station and a short time later, a report of a burglary came in involving some of the items found on the men. The reviewing court held that it was appropriate to stop and frisk the men under the circumstances, and that their attempted flight upon seeing the police was sufficient to warrant brief detention to determine if a more immediate crime had been committed.

Here the defendants ran from the police twice: first, as they fled the science building and between the buildings across the street and, again, when sighting the police car as they walked between two houses on the other side of the block. Since it is not disputed that the stop was appropriate here, we can properly consider the information flowing from that stop: that Loftus was not a resident of Galesburg or even of Illinois, that he was not a student of Knox College, that he admitted being in the science building and further admitted running from the building because he was frightened. At that point, good police procedure would require either detention of defendants at the point where they were stopped until a third police officer could be summoned to collect the witness Gorse at the science building and to bring him to Loftus and Wagner or, in the alternative, to transport Loftus and Wagner the short distance to the science building. We hold that the police did not err in choosing the more expedient procedure of taking defendants to the witness for a prompt showup.

For the reasons stated, we reverse the orders of the circuit court of Knox County and remand for further proceedings.

Reversed and remanded.

HEIPLE and SCOTT, JJ., concur.